## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

---

JAMES FORD, et al.,

        Plaintiffs,

    v.

FORD MOTOR COMPANY, et al.,

        Defendants.

1:15-cv-357 (NLH/KMW)
(consolidated)

**OPINION**

---

PLYMOUTH ROCK ASSURANCE a/s/o
JAMES FORD,

        Plaintiff,

    v.

FORD MOTOR COMPANY, et al.,

        Defendants.

---

**APPEARANCES**:

MICHAEL A. GALPERN
NEEL BHUTA
LOCKS LAW FIRM, LLC
801 N. KINGS HIGHWAY
CHERRY HILL, NJ 08034
    On behalf of Plaintiffs James Ford and Jeanne Ford

MICHAEL RIEHL
BRITT, RIEHL & SPUDIC, PC
58 WEST MAIN STREET
PO BOX 1149
FREEHOLD, NJ 07728
    On behalf of Plaintiff Plymouth Rock Assurance

WILLIAM J. CONROY
EMILY J. ROGERS
JULIANN SCHWEGLER KELLEY
CAMPBELL CAMPBELL EDWARDS & CONROY PC
1205 WESTLAKES DRIVE
SUITE 330
BERWYN, PA 19312
       On behalf of Defendants.


**HILLMAN,** District Judge

   This consolidated case arises from a fire in Plaintiffs

James Ford and Jeanne Ford's home in November 2012.  Defendants

move to preclude the testimony of Plaintiffs' expert Michael

Zazula and for summary judgment.  For the reasons that follow,

the Court will not preclude Zazula's testimony.  The Court also

denies Defendants' motion for summary judgment, as Plaintiffs

have provided a qualified expert to testify as to the cause of

the fire and questions of material fact remain on Plaintiff's

claims of a design defect, a manufacturing defect, and a failure

to warn.[1]

---

[1]    Defendants argue Plaintiffs failed to comply with Local
Rule 56.1(a), which provides, in pertinent part:

   The opponent of summary judgment shall furnish, with its
   opposition papers, a responsive statement of material
   facts, addressing each paragraph of the movant's
   statement, indicating agreement or disagreement and, if
   not agreed, stating each material fact in dispute and
   citing to the affidavits and other documents submitted
   in connection with the motion; any material fact not
   disputed shall be deemed undisputed for purposes of the
   summary judgment motion.

The Court takes the following facts from the parties'
statements of undisputed facts.  The Fords obtained a 2000 Ford
Windstar in 2007, when it was acquired from a relative.  On
November 30, 2012, between 3:00 PM and 3:30 PM, Mrs. Ford parked
the Windstar in their home's two-car garage.  Around 8:00 PM,
Mrs. Ford heard noises coming from the garage, including the
sound of breaking glass.  She alerted her husband, who opened
the door from the kitchen to the garage and saw smoke.  Mr. Ford
testified he attempted to extinguish the fire with a hose for
about five minutes before fire personnel arrived.

The Fords filed a complaint on November 26, 2014 in the New
Jersey Superior Court, Law Division, seeking recovery for
uninsured losses.  Shortly thereafter, Plymouth Rock Assurance
filed a subrogation action on July 28, 2015 in the New Jersey
Superior Court, Law Division, seeking recovery for the amounts

---

Defendants argue Plaintiffs have not provided citations for
their disputed facts and that, as a result, Defendants'
Statement of Undisputed Facts should be deemed admitted.
Defendants are correct that where Plaintiffs denied material
facts no citation was provided.  The Court admonishes
Plaintiffs' counsel for this violation of an important local
rule of procedure which greatly facilitates the Court's
consideration of Rule 56 motions.  Counsel is reminded to abide
by this Rule in all future proceedings before this Court.
Reading the record as a whole, however, Plaintiffs have advanced
sufficient issues of disputed material facts that require the
Court's denial of summary judgment, despite this technical
failure to abide by Local Rule 56.1(a).

paid pursuant to the Fords' insurance policy. Both actions were subsequently removed to federal court and consolidated.[2] Plaintiffs seek recovery under the New Jersey Product Liability Act.[3]

The Plaintiffs' expert, Zazula, produced an August 29, 2016 Investigation Report. In his report, Zazula noted several fire investigators determined the fire originated in the Windstar. In particular, he relied on Frank J. Domenico Jr., the Fire Official/Fire Investigator for the Town of Hammonton; Jim McKendrick of Palumbo Investigations; and Stanley Paluski of Sterling Investigative Services for their determination that the fire originated in the rear of the Windstar.

His report detailed the following with regard to his own investigation. On September 24, 2015, wiring from the Windstar was harvested for closer examination and radiographic exams. The wiring was also inspected under microscopy for evidence of electrical activity. Several of the conductors had evidence of electrical activity in the form of beading, which is consistent with an electrical defect such as a short circuit or high-

---

[2]    This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

[3]    Plaintiffs also originally sought relief based on Defendants' alleged breach of express and implied warranties. The breach of warranty claims have been dismissed by stipulation of the parties.

resistance connection. Zazula determined the fire occurred due

to the electrical defect (i.e., the beading), and that this was

consistent with an earlier recall of the vehicle, Recall NHTSA-

02V072000, which stated that contaminants entering the right

rear passenger compartment could cause a short circuit in the

rear wire harness, which could lead to a fire.[4]

On March 10, 2017, Defendants filed their Motion to

Preclude the Testimony of Michael Zazula and for Summary

Judgment.

**II.**

Summary judgment is appropriate where the Court is

satisfied that "'the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the

---

[4]    One of the recall documents stated:

Exposure of the C432 electrical connector to water and
environmental contaminants may bridge the positive and
ground pins, causing carbon tracking and corrosion that
results in a low resistance short circuit in the
connector. The primary source of water and dirt in the
connector results from missing body sealer between the
joint line of the floor pan and the right body side.
The location is at the body quarter panel inner behind
the right hand wheelhouse inner and in the front of the
right hand D-pillar trough. Contaminants enter the
electrical connector through the body gap from tire
splash. A low resistance short circuit in the electrical
connector may cause overheating, smoke, or fire in the
right rear quarter of the Windstar. Ford is aware of
eight confirmed reports and three unconfirmed reports
alleging fire related to this condition.

affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit. <u>Id.</u> "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" <u>Marino v. Indus. Crating Co.</u>, 358 F.3d 241, 247 (3d Cir. 2004) (citing <u>Anderson</u>, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. <u>Celotex</u>, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence

of a genuine issue of material fact."); see Singletary v. Pa.
Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although
the initial burden is on the summary judgment movant to show the
absence of a genuine issue of material fact, 'the burden on the
moving party may be discharged by 'showing' – that is, pointing
out to the district court – that there is an absence of evidence
to support the nonmoving party's case' when the nonmoving party
bears the ultimate burden of proof." (citing Celotex, 477 U.S.
at 325)).

Once the moving party has met this burden, the nonmoving
party must identify, by affidavits or otherwise, specific facts
showing that there is a genuine issue for trial. Celotex, 477
U.S. at 324. A "party opposing summary judgment 'may not rest
upon the mere allegations or denials of the . . . pleading[s]."
Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For
"the non-moving party[] to prevail, [that party] must 'make a
showing sufficient to establish the existence of [every] element
essential to that party's case, and on which that party will
bear the burden of proof at trial.'" Cooper v. Sniezek, 418
F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at
322). Thus, to withstand a properly supported motion for
summary judgment, the nonmoving party must identify specific
facts and affirmative evidence that contradict those offered by
the moving party. Anderson, 477 U.S. at 257.

**III.**

Defendants ask this Court to exclude the testimony of Plaintiffs' expert witness, Zazula. Defendants claim Zazula is unqualified and that his opinions are speculative and unreliable.

Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

> (b) the testimony is based on sufficient facts or data;

> (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

The Third Circuit has described the requirements of Federal Rule of Evidence 702 as a "trilogy of restrictions on expert testimony: qualification, reliability and fit." Calhoun v. Yamaha Motor Corp., 350 F.3d 316, 321 (3d Cir. 2003) (quoting Schneider ex rel. Estate of Schneider v. Fried, 320 F.3d 396, 405 (3d Cir. 2003)). "[T]he district court acts as a gatekeeper, preventing opinion testimony that does not meet the requirements of qualification, reliability and fit from reaching

the jury." Schneider, 320 F.3d at 404. Defendants contest each prong of this "trilogy of restrictions."

"The party offering the expert testimony bears the burden of establishing the existence of each factor by a preponderance of the evidence." Raritan Baykeeper, Inc. v. NL Indus., No. 09-4117, 2017 WL 3568401, at *2 (D.N.J. Aug. 16, 2017).

**A. Whether Zazula is qualified.**

A witness "must be qualified to testify as an expert." Calhoun, 350 F.3d at 321. This "requires 'that the witness possess specialized expertise.'" Id. (quoting Schneider, 320 F.3d at 405). However, the Third Circuit "interpret[s] this requirement liberally," and an expert can be qualified through "a broad range of knowledge, skills, and training." Id. (quoting In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741 (3d Cir. 1994)). This "liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." In re Paoli, 35 F.3d at 741. The Third Circuit has "eschewed imposing overly rigorous requirements of expertise and ha[s] been satisfied with more generalized qualifications." Id.

Defendants argue there are several deficiencies with Zazula's qualifications. First, Defendants highlight that Zazula's highest level of completed education is high school, and that he never obtained an advanced degree. Defendants also argue Zazula's experience does not qualify him as an expert.

As to Zazula's education, this Court finds Zazula's lack of an advanced degree in fire science or any technical science for that matter does not bar his qualification as an expert witness. Further, Zazula is not completely lacking in formal education.

Zazula testified at his deposition as follows with regard to his education. Zazula started attending college in 1985 at Camden County College. He took general education courses, but did not receive a degree. Around 1988, he enrolled at Rowan University to pursue a degree in fire science.[5] In 1999, Zazula left Rowan University. In the mid-2000s, Zazula re-enrolled at Camden County College in its fire science program in pursuit of an associate's degree. Zazula stayed at Camden County College for a year-and-a-half but did not complete his degree. Zazula started at Thomas Edison University in 2007. He was enrolled there for around eighteen months until they discontinued their fire science program.

"[I]t is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the expert does not have the specialization that the court considers most appropriate."

---

[5]  Zazula described fire science as dealing "with the chemistry of fire. How the fires progress. How fire progresses through a structure. Suppression efforts, firefighting tactics, fire investigation and various other phases," including determining the cause and origin of a fire.

Lauria v. AMTRAK, 145 F.3d 593, 598-99 (3d Cir. 1998) (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)). Indeed, experts can be qualified "on the basis of practical experience alone, and a formal degree, title, or educational specialty is not required." Id. "[I]nsistence on a certain kind of degree or background is inconsistent" with Third Circuit jurisprudence. In re Paoli, 916 F.2d at 855.

While Zazula never obtained a degree, he took several general education courses, as well as several fire science courses. While these alone are not likely to qualify him as an expert, this Court finds Zazula's education coupled with his experience in fire investigations sufficient to survive Defendants' challenge to his qualification as an expert witness.

Zazula testified in his deposition as follows with regard to his experience in the field of fire investigations. At the time of his deposition, Zazula was working as a forensic consultant at IEI Consulting, which "is a forensic consulting firm that conducts investigations to determine the cause and failure of components involved in loss of life, property, and other catastrophic losses."

For about twenty years, Zazula worked in field engineering, which involved looking at component failure, recall issues, and problems encountered by various car dealerships. While at Volkswagen of America, he investigated passenger vehicle failure

issues, including fuel-related fires.  While at YBH,[6] Zazula
started to obtain training with regard to investigating fires.
While employed at YBH, there were recalls dealing with ignition
coil fires.  Consequently, Zazula attended over twenty courses
dealing with "the failure, the failure analysis, the mode of
failure and what they were doing to remedy those failures."
Zazula then went to Prestige Volkswagen, and then worked as a
product analysis engineer for Volkswagen of America from 1999 to
2004.  As a product analysis engineer, Zazula looked at vehicles
and their related mechanical, electrical, and electromechanical
failures, which also involved work with fires.

Zazula attended a number of National Association of Fire
Investigators seminars and other related seminars on fire
origin/cause.  Zazula is a Certified Fire and Explosion
Investigator.  He obtained his certification around 2004, which
was last updated in 2015.  He has been a member of the National
Fire Protection Association (NFPA) since 2004.  Further, Zazula
has had over five hundred vehicle fire cases.  In over one
hundred of them, the fire occurred within the occupant space.
The Court finds this experience sufficient to survive
Defendants' challenge to Zazula's qualifications.

---

[6]     YBH is a Porsche, Audi, Volkswagen, and Mazda dealership.

**B. Whether Zazula's testimony is reliable.**

An expert witness's "testimony must be reliable." Calhoun, 350 F.3d at 321. "To establish reliability, the testimony 'must be based on the methods and procedures of science rather than on subjective belief or unsupported speculation; the expert must have good grounds for his . . . belief.'" Furlan v. Schindler Elevator Corp., 516 F. App'x 201, 205 (3d Cir. 2013) (quoting Schneider, 320 F.3d at 404). "In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993), the Supreme Court charged trial judges with the responsibility of acting as 'gatekeepers' to exclude unreliable expert testimony." Calhoun, 350 F.3d at 320-21 (quoting Daubert, 509 U.S. at 597).

Defendants' argument that Zazula's opinion is unreliable is twofold. First, Defendants argue Zazula improperly relied on other fire investigators in determining where the fire originated. Second, Defendants argue Zazula's own methodology is unreliable and his conclusion is speculative. The Court addresses both arguments in turn.

Zazula's report noted that Domenico, McKendrick, and Paluski all concluded that the fire originated in the Windstar,

specifically in the right rear area of the vehicle.[7]  Zazula
testified at his deposition as follows.  He was brought into
this case to investigate a vehicle fire after the initial
inspection concluded the fire did not start from anywhere
outside the vehicle.  His investigation "was limited to the
vehicle. . . .  [His] job was to look at the vehicle to
determine if the vehicle was involved and whether or not if it
were and if it caused the fire, what caused the fire within the
vehicle."

Zazula determined that the origin of the fire was in the
Ford Windstar.  The basis of this opinion "was [his]
investigation as well as the investigation of the other fire
officials."  He made this determination in part in reliance on
the local fire official and three other investigators that had
ruled out everything else in the garage.  When asked what about
his own investigation led him to conclude that the origin of the
fire was in the Windstar, he stated: "Looking at the vehicle.
Looking at the damage to the vehicle.  Looking at the wiring
systems within the vehicle.  The testimony of the Fords and the
time frame chronology as well as my knowledge, experience,
education and training."

---

[7]     While not referenced in his report, Zazula's deposition
testimony also makes clear he relied on Robert Disbrow of
Sterling Investigative Services.

As to ruling out other potential origins of the fire in the garage, Zazula testified that McKendrick ruled out other sources, and that he did not do that independently. Instead, he stated he "rel[ied] on Mr. McKendrick's 50 years of expertise in fire investigations. . . . He went in. He ruled out every possible ignition scenario."[8]

---

[8] The Court notes that none of the fire investigators have been qualified as experts and, the above quote from Zazula notwithstanding, the Court does not understand Plaintiffs to rely on those cases that hold that an expert may in some circumstances state their reliance on the expertise of other non-testifying experts. See, e.g., Dura Auto. Sys. of Ind., Inc. v. CTS Corp., 285 F.3d 609, 613 (7th Cir. 2002) ("[I]t is common in technical fields for an expert to base an opinion in part on what a different expert believes on the basis of expert knowledge not possessed by the first expert; and it is apparent from the wording of Rule 703 that there is no general requirement that the other expert testify as well."); Muhsin v. Pac. Cycle, Inc., No. 2010-060, 2012 WL 2062396, at *4 (D.V.I. June 8, 2012) ("Courts have held that, under some circumstances, an expert may rely on the opinion of another expert." (citing Cholakyan v. Mercedes-Benz USA, LLC, 281 F.R.D. 534, 544 (C.D. Cal. 2012))); United States v. 1014.16 Acres of Land, 558 F. Supp. 1238, 1242 (W.D. Miss. 1983) ("An expert cannot be an expert in all fields, and it is reasonable to expect that experts will rely on the opinion of experts in other fields as background material for arriving at an opinion."). Thus, this Court has no occasion to determine whether Zazula would have been correct in relying on the expertise of others. Muhsin, 2012 WL 206396, at *4 ("[T]he rules do not permit an expert to rely upon opinions developed by another expert for purposes of litigation without independent verification of the underlying expert's work." (quoting Fosmire v. Progressive Max Ins. Co., 277 F.R.D. 625, 630 (W.D. Wash. 2011))); accord ZF Meritor, LLC v. Eaton Corp., 696 F.3d 254, 292 (3d Cir. 2012) ("In some circumstances, an expert might be able to rely on the estimates of others . . . , but to do so, the expert must explain why he relied on such estimates and must demonstrate why he believed the estimates were reliable.").

Federal Rule of Evidence 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been aware of or personally observed.  If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted.  But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

"[E]xperts in various fields may rely properly on a wide variety of sources and may employ a similarly wide choice of methodologies in developing an expert opinion." Cooper v. Carl A. Nelson & Co., 211 F.3d 1008, 1020 (7th Cir. 2000).  In the view of this Court, it was permissible for Zazula to rely on the determinations of other on-site fire investigators, who could find no point of origin for the fire other than the Windstar in reaching his own expert opinion on the origin of the fire.  In his deposition testimony, Zazula made clear he was not testifying as an expert on the issue of ruling out other origins of the fire, but rather was relying on the fire investigators' findings as a starting point for his own investigation into the cause of the fire.[9]  In the view of this Court, this is precisely the situation contemplated by Rule 703.

---

[9]    Zazula inspected the Windstar on December 18, 2012 at the Fords' home.  Zazula again inspected the vehicle on August 6, 2015.

That the other investigators are not experts, and therefore their testimony inadmissible as such, is of no matter.  It seems obvious that a fire investigator would, in formulating his post-hoc opinion about the cause of a fire, look to the reports of responding investigators and their factual determinations, especially as it relates to other possible causes or origins of the fire.  See, e.g., United States v. Gardner, 211 F.3d 1049, 1054 (7th Cir. 2000) (finding a cause and origin expert's "reliance on reports, photographs, and third-party observations . . . served as a reliable basis for his testimony because these materials are facts or data 'of a type reasonably relied upon by experts' in the field of fire cause and origin" where the expert "testified that photographs and reports are the type of materials usually relied on in arson investigation to form an opinion about the cause of the fire").  Indeed,

> Rule 703 contemplates that experts often rely upon third party reports when making a decision and that this customary reliance is itself an extraneous indicia of trustworthiness sufficient to justify the dispensing of cross-examination.  It is assumed that the expert, having met the expert qualification test of Rule 702, has the skill to properly evaluate the hearsay and assign it appropriate probative value.

Emigh v. Consol. Rail Corp., 710 F. Supp. 608, 611-12 (W.D. Pa. 1989) (citation omitted) (citing In re "Agent Orange" Prod. Liab. Litig., 611 F. Supp. 1223, 1245 (E.D.N.Y. 1985)).  It should go without saying that it would be arguably irresponsible

and unprofessional to ignore such data if it existed.

The Court recognizes that this interpretation of Zazula's testimony and Rule 703 presents some dangers. More specifically: a) that the jury will be left with the impression that Zazula formed an expert opinion ruling out other possible sources for the fire and b) that the jury should consider the findings of the fire investigators themselves as the opinions of court qualified experts. However, Plaintiffs expressly disavow any testimony falling under a) and any potential for b) is easily cured by a jury instruction making clear to the jury what expert opinions have been allowed – or not allowed - by the Court. With an appropriate limiting instruction and careful questioning by counsel so as not to overstep the ground rules set by the Court, this Court finds no issue with Zazula's reliance on the fire investigators' factual determinations that no other sources of ignitions were found and that such data formed a foundational predicate for his own expert opinion. See, e.g., Allstate Ins. Co. v. Gonyo, No. 07-1011, 2009 WL 962698, at *6 (N.D.N.Y. Apr. 30, 2009) ("If there is any question that [the expert] did not eliminate every cause for the fire, this will not be determinative as to whether he will testify; all that it suggests is that the credibility of his decision may be subject to an attack. The same may hold true regarding . . . his consideration of the opinions of others as

to how the fire began.").

As for whether it was reasonable or appropriate for Zazula to rely on the fire investigators' findings is also easily addressed. While Defendants argue these other investigators themselves conducted improper and unreliable investigations, that is not an issue this Court can or should resolve. Any arguments Defendants have with regard to the underlying investigations themselves are questions not of legal admissibility but of factual weight, properly reserved for cross-examination of Zazula and any of the fire investigators who may be called as fact witnesses. Stecyk v. Bell Helicopter Textron, Inc., 295 F.3d 408, 414 (3d Cir. 2002) ("Rule 703 places the burden of exploring the facts and assumptions underlying the testimony of an expert witness on opposing counsel during cross-examination."); see also Keller v. Feasterville Family Health Ctr., 557 F. Supp. 2d 671, 680 (E.D. Pa. 2008) ("As with any factual dispute, the jury will exercise its traditional function of weighing all of the evidence and giving expert testimony whatever weight, if any, it merits."). The Court will not usurp the jury's role here. If the jury concludes that Zazula premised his opinion upon faulty or unpersuasive data they will be free to ignore or discount his expert opinion.

Zazula testified his job was not only to determine how the

vehicle might have caused the fire, but whether the vehicle was involved at all. Accordingly, his own investigation contributed to his conclusion that the Windstar was the origin of the fire, based on his observation of the vehicle, the damage, the progression of the fire pattern, the exterior of the vehicle, and the wiring system within the vehicle. He determined that his observations "were all consistent with the origin being in this vehicle." Thus, this is not a case where an expert "simply 'parrot[s]' the ideas of other experts or individuals." In re Wagner, No. 06-1026, 2007 WL 966010, at *4 (E.D. Pa. Mar. 29, 2007); accord Dura Auto. Sys., 285 F.3d at 614.[10]

The Court next addresses Zazula's methodology itself. In determining whether expert testimony is reliable, the Court is guided by the following factors:

> (1) whether a method consists of a testable hypothesis;
> (2) whether the method has been subject to peer review;
> (3) the known or potential rate of error; (4) the
> existence and maintenance of standards controlling the
> technique's operation; (5) whether the method is
> generally accepted; (6) the relationship of the
> technique to methods which have been established to be
> reliable; (7) the qualifications of the expert witness
> testifying based on the methodology; and (8) the non-
> judicial uses to which the method has been put.

---

[10] Plaintiffs' brief states that "Zazula is the only potential expert in this case that was present for all five physical investigations that were set up and coordinated through the litigation process." As Plaintiff has not provided a citation for this statement and this Court's independent review of the record does not find support, the Court does not rely on this assertion in coming to its decision.

Calhoun, 350 F.3d at 321.  However, "a court need not rely exclusively on this list and may take into account any other relevant factors."  Id.  Essentially, an expert is simply required "to testify to scientific knowledge," meaning "that the expert's opinion must be based on the 'methods and procedures of science' rather than on 'subjective belief or unsupported speculation.'"  In re Paoli, 35 F.3d at 742 (emphasis in original) (quoting Daubert, 509 U.S. at 589-90).

The Court finds Zazula's methodology sufficiently reliable. Zazula's deposition outlines the steps he took in reaching his conclusion on causation.  Wiring from the rear of the Windstar was harvested for closer examination and radiographic exams. The rear specifically was targeted because that is where most of the wiring was located and because the pattern of progression of the fire indicated it started in the rear.  The components had to be radiographed, as damage from the fire resulted in plastic melting and solidifying on the components.  Accordingly, while some components could be observed through the naked eye, others required radiography.

An area of one component caught Zazula's attention, as solidification of the plastic did not allow him to see the area clearly.  Accordingly, Zazula harvested that piece, cleaned it, and looked at it under microscopy for evidence of electrical activity.  At that point, Zazula saw activity on that section of

21

the electrical wiring. Zazula described this as a copper globule, which indicated an abnormal electrical event. He stated that, "[w]hen you have an arc that results in a bead, that clearly indicates the presence of [an] abnormal . . . electrical event. And beading is consistent with an electrical defect and/or anomaly such as short circuit or a high resistance connection."

Zazula testified that NFPA 921 is "a guide," which provides the scientific methodology that is used, in part, in investigating fires. NFPA 921 is typically considered to "provide[] a reliable fire causation determination methodology." State Farm Fire & Cas. Co. v. Steffen, 948 F. Supp. 2d 434, 439 n.6 (E.D. Pa. 2013). Zazula testified that "more or less there are parts or pieces of [NFPA 921]" that were part of his investigation. However, Zazula did not testify as to the methodology outlined in NFPA 921, nor did Plaintiffs provide this Court with a copy of NFPA 921. Accordingly, the Court is unable to compare the methodology used by Zazula with the established methodology in NFPA 921. Nonetheless, the Court finds Zazula's experience renders his methodology and opinion sufficiently reliable to proceed to trial.

"[T]here may be some circumstances where one's training and experience will provide an adequate foundation to admit an opinion and furnish the necessary reliability to allow a jury to

consider it . . . ." Oddi v. Ford Motor Co., 234 F.3d 136, 158

(3d Cir. 2000). "Cases where courts have allowed testimony

based on the experience of the expert often involve testimony as

to custom and practice that has been acquired via such

experience." W. Am. Ins. Co. v. Jersey Cent. Power & Light Co.,

No. 03-6161, 2008 WL 5244232, at *8 (D.N.J. Dec. 15, 2008). In

West American Insurance Co., the District of New Jersey found

that an expert's "experience in fire investigation sufficiently

supports his methodology absent evidence to the contrary." Id.

The Court finds Zazula's experience, recounted earlier in this

Opinion, renders his investigation reliable.

The Court notes Defendants' objections and the various

references in defense expert Jeff Colwell's report to alleged

deficits in Zazula's methodology. However, these are concerns

that can be raised in examining Colwell and in cross-examining

Zazula, as this goes to the weight of his testimony, not its

admissibility. See, e.g., Int'l Adhesive Coating Co. v. Bolton

Emerson Int'l, Inc., 851 F.2d 540, 544 (1st Cir. 1988) ("The

burden is on opposing counsel through cross-examination to

explore and expose any weaknesses in the underpinnings of the

expert's opinion."); Medina v. Daimler Trucks N. Am., LLC, No.

10-623, 2015 WL 1472156, at *4 (D.N.J. Mar. 31, 2015) ("The

alleged weaknesses of [the expert]'s opinions are best left to

the consideration of the jury, presented through cross-

examination and other appropriate evidence at trial.").

**C. Whether Zazula's testimony is fit.**

"As for fit, 'the expert's testimony must be relevant for the purposes of the case and must assist the trier of fact.'" Furlan, 516 F. App'x at 205 (quoting Schneider, 320 F.3d at 404). "Under Daubert, scientific testimony does not assist the trier of fact unless the testimony has a valid scientific connection to the pertinent inquiry." Soldo v. Sandoz Pharms. Corp., 244 F. Supp. 2d 434, 527 (W.D. Pa. 2003) (emphasis in original) (citing Daubert, 509 U.S. at 591).

> This standard is not intended to be a high one, nor is it to be applied in a manner that requires the plaintiffs "to prove their case twice – they do not have to demonstrate to the judge by a preponderance of the evidence that the assessments of their experts are correct, they only have to demonstrate by a preponderance of evidence that their opinions are reliable."

Oddi, 234 F.3d at 145 (quoting In re Paoli, 35 F.3d at 744).

The Court finds Zazula's testimony is a fit for this case. Zazula's conclusions "could reliably flow from the facts known to the expert and the methodology used." Id. at 146 (quoting Heller v. Shaw Indus., Inc., 167 F.3d 146, 153 (3d Cir. 1999)). Determining the cause of the fire is essential to resolving this case, and it is the heart of Zazula's testimony. Further, there is a valid scientific connection. The study of how a fire starts, how it progresses, and how certain components within a

vehicle can result in a fire will assist the trier of fact in determining whether the Windstar was the cause of the fire in the Fords' garage. Thus, the Court finds Zazula's testimony "is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." United States v. Schiff, 602 F.3d 152, 173 (3d Cir. 2010) (quoting Daubert, 509 U.S. at 591). Accordingly, the Court will not preclude Zazula's testimony.

## IV.

Having determined Zazula is qualified to testify, the Court now addresses Defendants' Motion for Summary Judgment. Plaintiffs seek relief under the New Jersey Product Liability Act, which provides:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: a. deviated from the design specifications, formulate, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulate, or b. failed to contain adequate warnings or instructions, or c. was designed in a defective manner.

N.J.S.A. 2A:38C-2. Accordingly, a plaintiff can recover based on a design defect, a manufacturing defect, or inadequate warnings. Plaintiffs allege all three bases in their complaint. Under all three theories, a plaintiff must prove that the defect

caused the injury.[11]

"Where the cause of an injury is arguably complex, a party must produce expert testimony on causation to survive a motion for summary judgment. Absent expert testimony, a reasonable jury cannot find from the evidence adduced that a manufacturing or design defect . . . _caused_ the fire at issue." State Farm Fire & Cas. Co. v. Gopher Baroque Enters., Ltd., No. 09-322, 2010 WL 5464767, at *6 (E.D. Pa. Dec. 29, 2010) (first citing Oddi, 234 F.3d at 159; and then citing Chubb v. On-Time Wildlife Feeders, 578 F. Supp. 2d 737 (M.D. Pa. 2008); Booth v. Black &

---

[11] "To succeed under a strict liability design defect theory in New Jersey, 'a plaintiff must prove that (1) the product was defective; (2) the defect existed when the product left the hands of the defendant; and (3) the defect caused the injury to reasonably foreseeable user.'" Indian Brand Farms, Inc. v. Novartis Crop Prot., Inc., 617 F.3d 207, 225 (3d Cir. 2010) (quoting Jurado v. W. Gear Works, 619 A.2d 1312, 1317 (N.J. 1993)).

"To plead a prima facie cause of action under the PLA, a plaintiff must show that the defendant manufactured the product, that a reasonably foreseeable user was injured, that the product was defective, that the defect existed when it left the defendant's control, and that the defect was the actual and proximate cause of the plaintiff's injury." Worrell v. Elliott & Frantz, 799 F. Supp. 2d 343, 350 (D.N.J. 2011) (citing Myrlak v. Port Auth. of N.Y. & N.J., 723 A.2d 45, 52 (N.J. 1999); Zaza v. Marguess & Nell, Inc., 675 A.2d 620, 627 (N.J. 1996); Jurado, 619 A.2d at 1317).

"To prevail on a claim for failing to adequately warn, a plaintiff must establish that (1) the product did not contain an adequate warning; (2) the inadequacy in the warning existed when the product left the defendant's control; (3) the inadequate warning caused injury to the plaintiff; and (4) the plaintiff was a reasonably foreseeable user of the product." Toms v. J.C. Penney Co., Inc., No. 05-2582, 2007 WL 2893052, at *7 (D.N.J. Sept. 28, 2007) (citing Zaza, 675 A.2d 620).

Decker, Inc., 166 F. Supp. 2d 215 (E.D. Pa 2001)); accord

Snodgrass v. Ford Motor Co., No. 96-1814, 2002 WL 485688, at *11

(D.N.J. Mar. 28, 2002) ("[D]eterminations of cause and effect in

vehicle fires" "are presumably normally made by experts in the

field.").

Plaintiffs and Defendants both produced experts on the

issue of causation.  As has already been discussed, Zazula,

Plaintiffs' expert, opines that the fire was caused by an

electrical defect in the Windstar.  By comparison, Colwell,

Defendants' expert, opines that "only a limited section of the

garage was excavated to identify possible ignition sources" and

thus "numerous possible ignition sources in other locations in

the garage were not identified and examined to determine if they

may have acted as an ignition source for the fire."

Consequently, Colwell determined that the "cause of the fire is

undetermined."  Accordingly, there remains a question of fact as

to the cause of the fire, rendering summary judgment

inappropriate.

The Court does not find Defendants' other arguments

persuasive that Plaintiffs have failed to present sufficient

evidence on their claims under the New Jersey Product Liability

Act.  Defendants argue there is insufficient evidence of a

design defect in the Windstar.  However, the Court finds

Zazula's testimony and the recall records to be sufficient

evidence of a design defect to survive summary judgment. More
specifically, certain documents from Defendants suggest the
Windstar lacked seals or sealing material adequate to insulate
the rear wiring harnesses from outside contaminants. Further,
Zazula noticed several conductors had evidence of electrical
activity in the form of beading, which is consistent with an
electrical defect. This evidence suggests a defect that existed
at the time the vehicle left Defendants' control.

Further, Defendants argue Plaintiffs failed to prove the
availability of a practical and feasible alternative design
under their design defect theory. See Lewis v. Am. Cyanamid
Co., 715 A.2d 967, 975 (N.J. 1998) ("To succeed on [a] design-
defect claim, [a] plaintiff [i]s required to prove that a
practical and feasible alternative design existed that would
have reduced or prevented [the] harm."). The Court finds
sufficient evidence of an alternative design to survive summary
judgment from the documentation of the recall. As Plaintiffs
indicate, Defendants produced a Q&A form, in which Defendants
explained that vehicles produced before and after the dates
covered by the NHTSA-02V072000 recall did not include the defect
identified in the recall: "A different structural sealer was
utilized in prior years. Following the dates of this recall,
new sealing techniques and inspection processes have been
instituted at the assembly plant." As Defendants have already

started using an alternative design, this argument fails.[12]

Finally, Defendants argue that even if there was a defect, Plaintiffs cannot succeed under a failure to warn theory because Defendants argue they fulfilled their duty to warn Plaintiffs by issuing the NHTSA-02V072000 recall. Plaintiffs counter that Defendants did not fulfill their duty because Defendants did not make a public statement regarding the recall. Plaintiffs argue that, as they were not the original owners of the Windstar, a jury could find that, by not making a public statement, they were not sufficiently warned. Defendants, however, respond that

---

[12]    The Court does not agree with Plaintiffs that the "products-liability analogue of res ipsa loquitur," Estate of Knoster v. Ford Motor Co., 200 F. App'x 106, 113 (3d Cir. 2006), is applicable here. The doctrine provides:

> It may be inferred that the harm sustained by the plaintiff was caused by a product defect existing at the time of sale or distribution, without proof of a specific defect, when the incident that harmed the plaintiff:
>
> (a) was of a kind that ordinarily occurs as a result of a product defect; and
>
> (b) was not, in the particular case, solely the result of causes other than product defect existing at the time of sale or distribution.

Id. This is not a case where a malfunctioning product bespeaks negligence. Cf. id. at 114 (finding "an inference of defectiveness" where a vehicle "suddenly and spontaneously accelerated without driver input"). Indeed, "[t]he rule of res ipsa loquitur is infrequently applied to cases involving fires." Menth v. Breeze Corp., 73 A.2d 183, 186 (N.J. 1950). "The reasons are not difficult to perceive. The cause of a fire is generally unknown, fires commonly occur where due care has been exercised as well as where due care was wanting." Id.

a public statement is not required, that a recall notice was
sent to the Windstar's prior owner, and that the recall work was
in fact performed.

N.J.S.A. 2A:58C-4 provides, in pertinent part:

> In any product liability action the manufacturer or
> seller shall not be liable for harm caused by a failure
> to warn if . . . the manufacturer or seller provides an
> adequate warning or instruction.  An adequate product
> warning or instruction is one that a reasonably prudent
> person in the same or similar circumstances would have
> provided with respect to the danger and that
> communicates adequate information on the dangers and
> safe use of the product, taking into account the
> characteristics of, and the ordinary knowledge common
> to, the persons by whom the product is intended to be
> used . . . .

A manufacturer is obligated "to take reasonable steps to notify
purchasers and consumers of the newly-discovered danger."
Feldman v. Lederle Labs., 429 A.2d 374, 388-89 (N.J. 1984).  It
is a question for the jury whether it was reasonable for
Defendants not to make a public statement of the recall.  Durkin
v. Wabash Nat'l, No. 10-2013, 2013 WL 2356212, at *11 (D.N.J.
May 29, 2013) ("New Jersey courts agree that the adequacy of a
product warning is a jury question.").  As to whether the recall
work was performed, this is also a question of fact left to the
jury.[13]  Thus, the Court will deny Defendants' Motion for Summary

---

[13]    Further, while not argued by Plaintiffs, in his deposition,
Zazula testified that, even if the recall was performed, it does
not impact his conclusion that the fire was related to the
identified defect.  Zazula testified that, even if the recall
was performed, there would still be "corrosion present and it's

30

Judgment.[14]

An appropriate Order will be entered.


Date:  October 27, 2017          s/ Noel L. Hillman
At Camden, New Jersey          NOEL L. HILLMAN, U.S.D.J.

---

going to continue to deteriorate the wire," even though there might not be more corrosion occurring after the recall was performed.

[14] Defendants' opening brief sought summary judgment on Plaintiffs' claims of design defect and failure to warn and challenged Plaintiffs' theory of liability based on a manufacturing defect for the first time only in their reply brief.  This is procedurally improper although the Court recognizes this was probably in fair response to Plaintiffs' arguments concerning a manufacturing defect claim in their opposition brief.  This procedural defect aside, to the extent that Defendants move for summary judgment on a manufacturing defect claim, that motion is denied.  The Court determines that because a disputed issue of material fact remains on the manufacturing defect theory such a claim survives summary judgment as well.  More specifically, Plaintiffs identified a document related to Recall NHTSA-02V072000 produced by Defendants which explained that "leakage [was] happening" because "[t]here was too much body build variability, and application of the sealer to seal the gap was not consistent." This evidence suggests a manufacturing, as opposed to a design, defect, sufficient to allow this theory to proceed to trial.